# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VEC, INC., | : |
| | : |
|     Plaintiff | : Civil Action No. 3:19-CV-2148 |
| | : |
|     vs. | : (Mehalchick, J.) |
| | : |
| JOYCE ELECTRICAL, INC. and | : |
| HUDSON INSURANCE CO. | : |
| | : |
|     Defendants | |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S EXPERT EVIDENCE

Dated: August 26, 2024

**STEVENS & LEE, P.C.**

Marianne J. Gilmartin
Pa. Attorney ID No. 47591
Peter J. Adonizio, Jr.
Pa. Attorney ID No. 325990
425 Biden Street, Suite 300
Scranton, PA 18503
Phone: (570) 969-5362
Fax: (610) 988-0866
marianne.gilmarting@stevenslee.com
peter.adonizio@stevenslee.com

*Attorneys for Defendants
Joyce Electrical, Inc. and
Hudson Insurance Co.*

## I. INTRODUCTION

This case arises from a 2019 Susquehanna County construction project ("Project") on which Joyce Electrical, Inc. ("Joyce"), acting as a subcontractor to VEC, Inc. ("VEC"), constructed an electrical line and substation for eventual use by Williams Field Service Company ("Williams"). VEC asserted delay-related claims against Joyce, while Joyce counterclaimed for damages arising from work it performed on the Project.

VEC has produced an expert report from George P. Ellis, a purported construction expert. Mr. Ellis's expert report is best characterized as a legal brief advocating VEC's litigation positions. Mr. Ellis apparently did not conduct any independent analysis. Rather, he speculates that Joyce is responsible for any and all Project delays and concludes that Joyce is therefore liable for all damages VEC alleges. Worse, Mr. Ellis purports to opine on VEC's damages, but he undertook no analysis and simply imported VEC's invoices and damages calculations (*i.e.*, costs to complete) into Mr. Ellis's own spreadsheets. Mr. Ellis did nothing to *verify* VEC's claimed damages or to analyze the reasonableness and appropriateness of costs VEC supposedly incurred to complete the Project.

Mr. Ellis's report consists of the following "opinions":

- Joyce fell behind schedule on the Distribution Line portion of the Project and failed to take action;

1

- "Joyce was **solely** responsible for being behind schedule . . . and **none** of the allegations raised by Joyce about other reasons for the Project being behind schedule have any merit";

- "VEC was justified in its belief that Joyce would not achieve the required Mechanical Completion date" and it was reasonable for Joyce to engage Bruce & Merrilees (another electrical subcontractor);

- Joyce's removal of equipment and material from the Project caused VEC to not meet the Mechanical Completion date and to incur additional costs; and

- Joyce owes VEC $1,403,035.40.

But Mr. Ellis's opinions are unreliable. He conducted no independent analysis. He used no verifiable or scientific methodology. His opinions are based purely on subjective belief or unsupported speculation and not on "good grounds" of reliable methods and procedures. *See In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994). The conclusory nature of his opinions underscore what Mr. Ellis did in this case—he weighed the credibility of competing deposition testimony, impermissibly made factual findings in favor of VEC, and improperly drew pure conclusions of law in favor of VEC.

Rather than helping the factfinder, Mr. Ellis's report attempts to usurp that role. Mr. Ellis's report and anticipated testimony will not help the Court understand the evidence or determine a fact at issue. It is the Court—not a plaintiff's expert—who is tasked with weighing the evidence, making credibility determinations, finding facts, and drawing conclusions of law.

2

For the following reasons, Defendants respectfully request the Court grant their motion and preclude VEC from offering any expert evidence at trial.

## II.  RELEVANT PROCEDURAL AND FACTUAL HISTORY

VEC initiated this action by filing a Complaint against Defendants on December 17, 2019, asserting claims against Joyce for breach of contract (Count I), unjust enrichment (Count II), conversion (Count III), and a performance bond claim against Hudson Insurance Company (Count IV).  [Doc. No. 1].  On February 17, 2020, Defendants filed an Answer to the Complaint and Joyce asserted counterclaims against VEC for breach of contract (Counterclaim I), a Contractor and Subcontract Payment Act ("CASPA") claim (Counterclaim II), conversion (Counterclaim III), fraud in the inducement (Counterclaim IV), and equitable estoppel/duress (Counterclaim V).  [Doc. No. 15].  On March 9, 2020, VEC filed an Answer to Joyce's Counterclaims.  [Doc. No. 21].  The parties engaged in discovery and fact discovery was completed in December 2022.

## III.  STATEMENT OF THE QUESTION PRESENTED

SHOULD THE COURT GRANT DEFENDANTS' MOTION *IN LIMINE* TO EXCLUDE PLAINTIFF'S EXPERT EVIDENCE BECAUSE MR. ELLIS'S REPORT IS DEVOID OF ANALYSIS AND HIS OPINIONS ARE UNRELIABLE AND DO NOT FIT THE CASE?

**<u>Suggested Answer</u>:  Yes.**

## IV. ARGUMENT

### A. Legal Standard

Federal Rule of Evidence 702 provides that an expert witness "may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case."

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court explained that Rule 702 requires courts to function as gatekeepers, analyzing whether expert evidence is relevant and reliable. 509 U.S. 579, 597 (1993). This gatekeeping obligation applies to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999). And trial courts must undertake this gatekeeping role in both jury and non-jury trials. *UGI Sunbury LLC v. A Permanent Easement for 1.7575 Acres*, 949 F.3d 825, 832-33 (3d Cir. 2020).

Rule 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Est. of Schnieder v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted). "*Daubert* states that a judge should find an expert opinion reliable under Rule 702 if it is based on 'good

4

grounds,' *i.e.,* if it is based on the methods and procedures of science." *In re Paoli*, 35 F.3d at 744. "To determine whether an expert's testimony 'fits' the proceedings, this Court asks whether it 'will help the trier of fact to understand the evidence or to determine a fact in issue.'" *UGI Sunbury, LLC*, 949 F.3d at 933-84 (citations omitted).

Courts should exclude expert evidence if the expert's opinions "cannot be grounded upon" the facts of the case or are "based on speculation or conjecture[.]" *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996). Courts should not admit "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joinder*, 522 U.S. 136, 146 (1997) (citation omitted) (affirming decision to exclude expert whose opinions were too speculative).[1] An expert's "failure to employ a method of confirming his opinion . . . renders his opinion . . . speculative and inherently unreliable." *Pa. State Univ. v. Keystone Alternatives LLC*, 2023 WL 2385917, at *13 (M.D. Pa. Mar. 6, 2023) (Kane, J.) (citation omitted). Finally, "the touchstone of expert admissibility is helpfulness to the trier of fact," and unreliable evidence is

---

[1] "*Ipse dixit* is defined in Black's Law Dictionary as "a bare assertion resting on the authority of an individual." *Hamilton v. Emerson Elec. Co.*, 133 F. Supp. 2d 360, 370 (M.D. Pa. 2001) (McClure, J.) (quoting Black's Law Dictionary 828 (6th ed. 1990)).

"completely unhelpful to the trier of fact." *Bruno v. Bozzuto's, Inc.*, 311 F.R.D. 124, 140, 144 (M.D. Pa. 2015) (Brann, C.J.).

### B. Mr. Ellis's Project delay opinions are unreliable, do not fit the case, and will not help the trier of fact.

In his report, Mr. Ellis presents four "opinions and conclusions" regarding Project delays that can be synthesized as follows: Joyce is solely responsible for any and all project delays and VEC's resulting damages. After devoting 26 pages of his report to a recitation of the background and facts of the case based on VEC deposition testimony (to the exclusion of other evidence), Mr. Ellis spends just six pages on his purported analysis of Joyce's liability for Project delays. For the next 23 pages, Mr. Ellis refutes Joyce's contentions about Project delays. His purported "analysis" repeats facts and cites only documents favorable to VEC, and he then draws conclusions based on his "experience."

By way of just two examples of Mr. Ellis's lack of analysis:

- Mr. Ellis cites John Joyce's transcript and draws his own conclusion that Joyce believed he could complete his scope of work "however he pleased," regardless of the Project Schedule; [Mot. Ex. A, p. 28], and

- Mr. Ellis insinuates that Joyce performed no work on the Project on certain days but ignores VEC's own documents showing Joyce performed substation work on those days. [*Id.* p. 29].

In addition, Mr. Ellis's rejection of the "alleged impacts that were raised by Joyce," [*Id.* p. 32], as to the Project Schedule are wholly unreliable. In the ten subsections under this section of Mr. Ellis's report, only one section (weather

6

delays) contains any independent review or analysis. The other nine sections simply contain repetition of facts favorable to VEC's positions (including inadmissible parol evidence and hearsay), legal argument/advocacy, and bald conclusions based only on Mr. Ellis's "experience." Mr. Ellis plainly ignores, or refuses to consider, any facts that are not favorable to VEC.

To make matters worse, the only independent analysis Mr. Ellis performed—his weather analysis—is demonstrably inaccurate. Mr. Ellis cites to an obscure website (Wunderground.com) for his opinion that the Project location (in Susquehanna County) received below historical average rainfall in April, May & June 2019. [*Id.* p. 33-34]. Mr. Ellis claims that the historical average precipitation for those months is: April, 4.62 inches; May, 5.40 inches; and June, 4.94 inches. [*Id.* p. 33]. However, the historical data cited by Mr. Ellis is for the Wilkes-Barre/Scranton International Airport, some 40+ miles away from the Project. [*See* Mot. Ex. B].[2] A simple search of the National Weather Service's publicly available website shows the historical average precipitation for Montrose, PA (just 13 miles from the Project location) as: April, 4.07 inches; May, 4.26 inches; and June, 4.64 inches  *See* https://www.weather.gov/wrh/Climate?wfo=bgm, last accessed August 26, 2024.

---

[2] Exhibit B to Defendants' Motion *in Limine* is Attachment 34 to Mr. Ellis's report.

Thus, Mr. Ellis's conclusion that the Project received less than average precipitation is wholly wrong.[3]

"The role of an expert witness in federal court is thus necessarily an active one—it requires, at a minimum, an appropriate mix of careful fact-gathering *and constructive analysis*, two hallmarks in any expert methodology assuring that the proffered opinions stand on good footing and *proceed with a tested analysis*." *Bruno*, 311 F.R.D. at 144 (emphasis added). An expert's opinion must be based on sound methodology and analysis, and it must have a scientific basis generally accepted in the relevant expert community. *Kumho Tire*, 526 U.S. at 151-53, 156. An expert must properly apply "principles and methods" to the facts of the case. *Id.* at 157.

"[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. *Gen. Elec.*, 522 U.S. at 137. An expert's "failure to employ a method of confirming his opinions . . . renders his opinions . . . speculative and inherently unreliable." *Pa. State Univ.*, 2023 WL 2385917, at *13.

---

[3] Mr. Ellis concluded that "there was no extreme weather experienced on the Project." [Mot. Ex. A p. 34]. However, this conclusion is directly contradicted by documents Mr. Ellis relied on which state that the Project team was working through "abnormal weather patterns and mud as best as possible." [*See* Mot. Ex. C (Attachment 50 to Mr. Ellis's report)].

8

In *Kuhar v. Petzl Co.*, 2022 WL 1101580, at *8 (3d Cir. Apr. 13, 2022), the Third Circuit affirmed a district court's exclusion of expert evidence that was found unreliable. The Third Circuit reasoned that the district court properly found the evidence unreliable because there was no data or independent testing to support the expert's opinions. *Id.* at *8-9. The Third Circuit further explained that, without independent analysis, the expert's opinions "were more akin to subjective belief or unsupported speculation than to determinations fully based on the [expert's use of] methods and procedures of science." *Id.* at *8 (quoting *In re Paoli*, 35 F.3d at 742) (bracketing in original) (cleaned up).

Here, Mr. Ellis's delay opinions are the epitome of *ipse dixit*. Mr. Ellis did not conduct any independent analysis, but instead drew credibility conclusions based on his "experience." Under Rule 702 and *Daubert*, Mr. Ellis's opinions are unreliable because he used no methodology or analysis. He applied no "principles and methods" to the facts of this case. Because he did not use any scientific method or analysis to confirm his opinions, his opinions are unreliable, and the Court cannot even conduct a true *Daubert* analysis. *See Daubert*, 509 U.S. at 580 ("The [*Daubert*] inquiry . . . must be solely on principles and methodology, not on the conclusions they generate."); *Sikkelee v. Precision Airmotive Corp.*, 522 F. Supp. 3d 120, 158 (M.D. Pa. 2021) (Brann, C.J.) ("There is no way for the Court to assess [the expert's] methodology because [he] provides nothing more than

9

conclusory assurances that his expert opinion is reliable. There is no identifiable methodology.").

In addition, Mr. Ellis's opinions do not fit the case and will not help the factfinder understand any evidence or decide any fact in dispute. The facts in this case are straightforward and easily understandable by the average person. This case does not involve any complicated or complex construction industry specific issues. Although the parties dispute the legal impact of the facts, it is the Court—not Mr. Ellis—who will resolve those disputes. Mr. Ellis's net opinions, or *ipse dixit*, should be excluded from evidence because they "would be completely unhelpful or harmful to the trier of fact." *Bruno*, 311 F.R.D. at 140.

### C. Mr. Ellis is not qualified as a damages expert, and his damages opinions lack any analysis whatsoever and will not help the trier of fact.

In addition to the issues with Mr. Ellis's delay opinions, Mr. Ellis's damages opinions are particularly unreliable because Mr. Ellis (1) has no qualifications to opine on damages, and (2) did not conduct any analysis of VEC's alleged damages. Mr. Ellis merely imported VEC's damages calculations into his own spreadsheets. [Mot. Ex. A pp. 64-71]. His damages opinions lack any analysis as to whether the costs allegedly incurred by VEC to complete the Project were appropriate or reasonable. And he did not consider whether VEC attempted to mitigate its damages.

10

In *Legendary Art, LLC v. Godard*, 2012 WL 3550040, at *4 (E.D. Pa. Aug. 17, 2012), a court in the Eastern District excluded an expert's damages opinions because he failed to conduct any independent analysis. The court noted that the expert merely "assumed the validity" of the plaintiff's profit and loss calculations, "without independent verification." *Id.* The court concluded that the expert's opinions were "unreliable and d[id] not rest on good grounds." *Id.*

Mr. Ellis's damages opinions suffer from the same flaws—he did no independent analysis of VEC's damages calculations. Moreover, if VEC can establish liability at trial (which Defendants vehemently dispute), Mr. Ellis's damages opinions will do nothing to help the factfinder. VEC can introduce the same "evidence" of its purported damages through a fact witness, without the guise of "expert" testimony.

[Remainder of page intentionally left blank]

## V.  CONCLUSION

For all the foregoing reasons, Defendants respectfully request that this Court grant their motion and prelude VEC from offering any expert evidence at trial.

Dated: August 26, 2024                 **STEVENS & LEE, P.C.**

                                       By: /s/ *Marianne J. Gilmartin*

                                       Marianne J. Gilmartin
                                       Pa. Attorney ID No. 47591
                                       Peter J. Adonizio, Jr.
                                       Pa. Attorney ID No. 325990
                                       425 Biden Street, Suite 300
                                       Scranton, PA 18503
                                       Phone:  (570) 969-5362
                                       Fax:  (610) 988-0866
                                       marianne.gilmarting@stevenslee.com
                                       peter.adonizio@stevenslee.com

                                       *Attorneys for Defendants*